# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| **Christopher Funk,** )<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**Officer L. Battle,** )<br>**Defendant.** ) | 1:18cv1196 (LO/JFA) |

## MEMORANDUM OPINION & ORDER

Christopher Funk, a Virginia inmate proceeding pro se, initiated this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Eighth Amendment. Defendant Lucilla Correa-Battle ("defendant" or "Officer Battle") has filed a motion for summary judgment, a memorandum in support of her motion, a video of the events in question, and a host of documentary exhibits. Dkt. Nos. 17-18. Plaintiff received the notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 19], but has failed to submit any materials in opposition to defendant's motion. This matter is therefore ripe for adjudication. For the reasons that follow, defendant's motion for summary judgment will be granted, and this civil action will be dismissed.

## I. Background

The undisputed facts are as follows.[1] On June 11, 2018, defendant was assigned to Pod C-2 of Rappahannock Regional Jail ("RRJ"), the pod in which plaintiff was housed. Battle Aff.

---

[1] Because plaintiff has not offered any materials in opposition to defendant's motion for summary judgment, the facts set out in this section derive only from defendant's sworn affidavit [Dkt. No. 18-2], the memorandum of law in support of defendant's motion [Dkt. No. 18], and the exhibits that accompany the memorandum of law [Dkt. No. 18-1, Att. A-Y].

¶¶ 2-4. At approximately 9:45 p.m., Officer Battle dispensed juice boxes to the inmates, including plaintiff, who had received Ramadan meal trays earlier in the evening. Id. at ¶ 3. Defendant unlocked plaintiff's cell door tray slot and handed plaintiff a juice box. Id. at ¶ 4. As defendant moved to close the tray slot, plaintiff extended his arms out of the opening, thereby preventing it from closing. Id. at ¶ 5. Plaintiff at that time complained that he had not received enough cakes or chips with his dinner tray. Id. Officer Battle then issued plaintiff a direct order to remove his hands from the tray slot so she could close and secure it, as is required by RRJ policy. Id. at ¶¶ 6-7. Defendant once more attempted to close the slot but was prevented from doing so by plaintiff, who again pushed the slot back open and placed his arms in the opening. Id. at ¶¶ 8-9.

With the intention of returning once plaintiff became compliant, Officer Battle moved away from plaintiff's cell without closing the tray slot door. Id. at ¶¶ 10-11; Dkt. No. 18-1, p. 24. As defendant distributed mail to other inmates, plaintiff threw two food trays out of the tray slot door in the direction of defendant, strewing food across the ground in her vicinity. Battle Aff. ¶¶ 12-13. From the location of his cell, plaintiff equally could have aimed projectiles at a desk officer located just below him. Id. at ¶ 26. Once plaintiff removed his hands from the slot, Officer Battle returned to the cell in order to close it. Id. at ¶¶ 15-16. As defendant attempted to close the slot, plaintiff returned his arm to the opening, and plaintiff's left hand was momentarily pinned in the door. Id. at ¶¶ 17-19; Dkt. No. 18-1, p. 24. Officer Battle once more walked away from plaintiff's cell, at which point plaintiff yelled, "Fuck you, you fucking bitch," and threw a cup of ice in her direction. Battle. Aff. ¶¶ 27-28.

Defendant informed Sergeant Adcock of her interactions with plaintiff, and the sergeant, after using the intercom to communicate with plaintiff, instructed defendant to return to plaintiff's cell to close the tray slot. Id. at ¶¶ 33-34. On her third attempt, defendant was able to

2

do so without issue. Id. at ¶¶ 33-35. Later in the evening, Sergeant Foster and Sergeant Adcock escorted plaintiff to the medical unit for examination. Dkt. No. 18-1, p. 21. There, LPN Quayes evaluated plaintiff and cleared him to leave medical with no treatment after finding no swelling, paleness, or discoloration in plaintiff's left hand. Dkt. No. 18-1, p. 57. Approximately four months after the events in question, however, plaintiff was diagnosed with a scaphoid fracture in his wrist for which he needed surgery. Id. at p. 56.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial… by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

Plaintiff claims that Officer Battle used excessive force in violation of the Eighth Amendment when she shut his arm in his cell door's tray slot. The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "core judicial inquiry" in an excessive force claim

3

is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Determination of whether force was necessary or intentionally aimed at inflicting unnecessary physical harm requires consideration of factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, the extent of injury inflicted, and any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; see also Wilkins v. Gaddy, 559 U.S. 34, 37-39 (2010). "[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective." United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990) (quotations omitted).

Defendant has introduced—and plaintiff has failed to call into question—evidence that forecloses the notion that defendant acted maliciously or sadistically against plaintiff. Indeed, all five Whitley factors weigh in favor of dismissal.

1. **Need for the Application of Force**

As to the first factor, whether the use of force was necessary, defendant has introduced evidence that shows plaintiff refused to obey direct orders and threw food trays at Officer Battle before defendant attempted to close the tray slot. Plaintiff's behavior justified the use of some force to regain order. See Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (finding guards' decision to use force justified in the face of inmates' refusal to cease unruly and disruptive behavior); see also Karavias v. Virginia, 2013 WL 3879701, at *3 (W.D. Va. July 26, 2013) ("Plaintiff's arms did not belong outside of his cell when returning the lunch tray, and his persistent refusal to comply with staff's orders required some type of force to restore discipline

4

and order"). Though defendant was ultimately able to close the tray slot without exerting any force against plaintiff, this occurred only after plaintiff ignored defendant's direct orders, threw several items in defendant's direction, and swore at defendant. In sum, this factor cuts in favor of Officer Battle.

2. **Relationship Between Need and Amount of Force Used**

With respect to the second criterion, the evidence on record demonstrates that defendant used only as much force as was necessary to close the tray slot. When plaintiff initially refused to remove his arm from the area, defendant did not even attempt to close the slot; she instead walked down the row to distribute mail with the intent to return. Only later, when defendant noticed that plaintiff had removed his hand, did Officer Battle attempt physically to close the slot. Defendant pressed on the door for only a brief period when plaintiff's hand became stuck in the door, and without the force necessary to infer that she sought to hurt plaintiff to force him to move his hand from the opening.

3. **Extent of Perceivable Threat**

The third factor, too, falls in favor of defendant Battle. Indeed, the record demonstrates that officials on-site reasonably could have perceived plaintiff's tray slot being open as a genuine threat to the safety of staff and inmates. With the tray slot open, plaintiff was able to throw food trays and ice at Officer Battle. The video of the incident shows that plaintiff could also have targeted jail officials at a desk below his cell door or other inmates who were present in the area.

4. **Extent of Plaintiff's Injuries**

The fourth factor is perhaps the cloudiest. The record demonstrates that plaintiff suffered some harm to his left hand/wrist in the months that followed the incident in question, but it does not make clear the cause of those injuries or when they were incurred. As noted above, plaintiff

5

was diagnosed with a scaphoid fracture four months after the events of June 11, 2018. Plaintiff, however, demonstrated no signs of injury that night. Additionally, on April 13, 2018, two months before his interaction with Officer Battle, plaintiff reported feeling dizzy and falling onto his left hand. He stated, "I felt dizzy while I was in my cell and fell. I hurt my left hand. I think its broken." Dkt. No. 18-1, p. 14. Plaintiff himself therefore told prison officials of a hand injury that predated June 11, 2018.

It is possible that Officer Battle's actions were the cause of plaintiff's scaphoid fracture, but, due to the length of time between defendant's actions and plaintiff's diagnosis, as well as the possibility that plaintiff's injury was preexisting, the weight of evidence as to the extent of plaintiff's injury does not imply malicious or sadistic intent by defendant. See Cherry v. Sherin, 2012 WL 664203, at *6 (E.D. Va. Feb. 28, 2012) (finding that aggravation of inmate's preexisting injuries weighed less heavily against a guard than causing new injuries).

5. **Defendant's Efforts to Temper Severity of Response**

Finally, though, there is no evidence to suggest that defendant Battle sought to temper the severity of her force, there is ample evidence that Battle sought not to use force in the first instance. Before attempting to close plaintiff's tray slot door, defendant issued verbal demands that plaintiff remove his arm. Defendant also walked away from the cell, planning to return when plaintiff's arm no longer impeded the tray slot. When defendant ultimately did physically attempt to close the slot, she pushed lightly and only for a very brief period. This factor falls in favor of defendant Battle.

### IV. Conclusion

The evidence, viewed in the light most favorable to the nonmovant, shows that plaintiff repeatedly physically blocked defendant's attempts to close a cell's tray slot, ignored verbal

6

commands to move his hand, and threw multiple objects at defendant. It shows that defendant momentarily trapped plaintiff's hand as she attempted to close the tray slot. Even if defendant's actions caused or exacerbated an injury in plaintiff's left hand, the record is clear that defendant did not act maliciously or sadistically for the purpose of causing plaintiff harm. Instead, defendant sought to close plaintiff's tray slot in order to regain order in Pod C-2 of RRJ. Plaintiff has not offered any contrary evidence. For these reasons, defendant's motion for summary judgment will be granted, and this action will be dismissed.[2] Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment [Dkt. No. 17] be and is GRANTED; and it is further

ORDERED that this civil action be and is DISMISSED.

To appeal this decision, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short statement evincing a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court. Failure to file a timely notice of appeal waives the right to appeal this decision.

The Clerk is directed, pursuant to Fed. R. Civ. P. 58, to enter final judgment in favor of Officer Battle, to send a copy of this Order to plaintiff and to counsel of record for defendant, and to close this civil action.

Entered this 19th day of June, 2019.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[2] Because there is no genuine dispute as to whether a constitutional violation occurred in this case, there is no need to conduct an analysis of defendant's proposed qualified immunity defense.

7